## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **CHRISTINA DEARRY,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:11CV00027 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | By:  James P. Jones |
| **COMMISONER OF** | ) | United States District Judge |
| **SOCIAL SECURITY** | ) | |
| | ) | |
| Defendant. | ) | |

*Roger W. Rutherford, Wolfe, Williams, Rutherford & Reynolds, Norton, Virginia, for Plaintiff.  Nora Koch, Acting Regional Chief Counsel, Region III, Roxanne Andrews, Assistant Regional Counsel, Robert W. Kosman, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this social security case, I affirm the final decision of the Commissioner.

### I

Plaintiff Christina Dearry filed this claim challenging the final decision of the Commissioner of Social Security (the "Commissioner") denying her claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") pursuant to Titles  II and XVI of the Social Security Act (the "Act"), 42 U.S.C.A.

§§ 401-433 (West 2011) and 1381-1383f (West 2003 and Supp. 2011). Jurisdiction of this court exists under 42 U.S.C.A. §§ 405(g) and 1383(c)(3).

Dearry filed applications for DIB and SSI on February 13, 2007, alleging disability beginning on October 1, 2006. The claims were denied initially and on reconsideration. An administrative hearing was held before an administrative law judge ("ALJ") on December 17, 2008, at which Dearry, represented by counsel, and a vocational expert testified. On March 31, 2009, the ALJ issued a written decision, finding that Dearry had the residual functional capacity ("RFC") to perform light work with various limitations, was able to perform her past relevant work as a companion, and was not disabled. The Social Security Administration's Appeals Council denied Dearry's request for review on June 2, 2011, and the ALJ's decision became the final decision of the Commissioner. Dearry then filed her Complaint in this court seeking judicial review.

The parties have filed cross motions for summary judgment which have been briefed. The case is ripe for decision.


II

The only issue before the court on summary judgment is whether the ALJ correctly assessed the evidence and applied the law in her determination that

Dearry did not meet the listing requirements for mental retardation.  The review of the facts will be limited to those relevant to this determination.

Dearry attended school through the seventh grade.  She was required to repeat both first and sixth grades.  Her grades were generally low and in the last year of her schooling were Ds and Fs.  She left school to get married.

Dearry can read and write and filled out the numerous disability application forms herself.  She initially alleged disability only for back problems, bipolar disorder and left arm problems.

The issue of Dearry's mental retardation apparently came to the surface when a state agency examiner requested medical advice based on intellectual testing in the record which indicated that Dearry had a verbal IQ score of 65, a performance IQ score of 75, and a full scale IQ of 66, although the examiner stated that Dearry had not made a great effort and opined that there was potential for a higher score.[1]  (R. at 251.)

A state agency psychologist, E. Hugh Tenison, Ph.D., reviewed Dearry's file and concluded that Dearry had estimated borderline intellectual functioning but that the impairment was not severe enough to meet the listing requirements.  He did not find the 2003 intellectual testing scores to be valid, noting that effort had

---

[1]  This intellectual testing was apparently done in 2003 by Donna Abbot, M.A. The report of the testing was in the record at least through the administrative hearing but no longer appears in the record, although it is referenced in detail multiple times.

been minimal.  He opined that Dearry had moderate functional limitations in daily activities, social functioning and concentration, persistence and pace and she had suffered no episodes of decompensation.  He also opined that she would be able to perform simple, nonstressful work.

Joseph Leizer, Ph.D., a state agency psychologist, reviewed Dearry's file. He found that her mental impairments caused only a mild restriction in her daily living activities, moderate functional limitations in social functioning and concentration, persistence and pace, and she suffered from no episodes of decompensation.  Leizer also did not find the 2003 intellectual testing scores to be valid, noting that the record indicated that her effort appeared to be marginal and her score potentially could be higher.  He stated "there is no substantiation [that] … her 3/12/03 IQ scores were valid indicators of her intellectual functioning."  (R. at 349.)  He opined that she appeared to retain the mental capacity to perform simple, unskilled, and nonstressful work.

At the administrative hearing, the ALJ noted that there was a possibility that Dearry met the listing requirements for mental retardation, based on the 2003 intellectual testing scores.  Dearry testified that she lives with her three children at her former mother-in-law's house.  She stated that all three of her children are

disabled and receive benefits.[2]   She testified that she handles her children's banking accounts and withdraws money to provide for their living expenses and care.  She testified that she has a valid driver's license and passed the written test on her first try.  She drives and takes her children to doctors' appointments.  She testified that she could read some of the words in the newspaper but had some difficulty with the big words.

Dearry also testified that she had last worked as a companion to her disabled brother-in-law, providing him meals and accompanying him when he left the house.  She stopped working for him because he became verbally abusive.  She stated that she would like to return to work and would accept a job that was not too stressful.

The vocational expert testified that her companion job was classified as unskilled, light work.   The ALJ asked the vocational expert to consider a hypothetical individual of Dearry's background and limitations with the RFC determined by the ALJ.  The vocational expert testified that such an individual could perform Dearry's past relevant work as a companion.  The ALJ ultimately decided to send Dearry for another round of intellectual testing, given the questionable nature of the 2003 scores.

---

[2]  As the ALJ noted, the evidence indicates that only two of Dearry's children are disabled and receiving benefits.

On January 21, 2009, Wayne B. Lanthorn, Ph.D., conducted a psychological evaluation of Dearry at the request of the Commissioner.  Dr. Lanthorn performed intellectual testing, which yielded a verbal IQ score of 66, a performance IQ of 81, and a full scale IQ of 70.  These scores placed her in the borderline range of current intellectual functioning.  Dr. Lanthorn noted that statistically, these scores were "comparatively identical" to those she had obtained in the 2003 testing.  (R. at 700.)  He stated that Dearry was well motivated and these scores were valid and reflected her current degree of functioning.  Dr. Lanthorn stated that Dearry was functioning in the borderline range intellectually, has a relatively good short-term memory, has a fairly active daily activity schedule and provides care for two minor children.  He further noted she does a wide variety of household tasks, goes to the grocery store, socializes with family members, and has a valid driver's license.  He found that her communication skills were good.  Ultimately, he concluded that Dearry is capable of functioning in a 40-hour per week job "within the limitations of her overall level of intellectual functioning and limited reading skills."  (R. at 702.)

In her decision, the ALJ found that Dearry had the severe impairments of low back pain, GERD, headaches, depression and borderline intellectual functioning.  She further found that Dearry did not meet the listing requirements for mental retardation. In so finding, she concluded that Dearry was mildly

restricted in activities of daily living and social functioning and was moderately limited in concentration, persistence, and pace.  She further found that Dearry had not had any episodes of decompensation.  The ALJ also specifically found that Dearry did not have a valid verbal, performance or full scale IQ of 60 through 70. She declined to give significant weight to Dr. Lanthorn's test results.  She stated:

> Claimant has only a fourth grade reading ability, and achieved a performance IQ of 81.  She was in special education classes and did not complete high school and the discrepancy between her performance IQ and the other scores is more indicative of a learning disability and/or difficulty reading than it is indicative [of] IQ scores of 70 or below.

(R. at 21.)   The ALJ thus concluded that Dearry did not meet the listing requirements for mental retardation.

Dearry argues that this conclusion is not supported by substantial evidence. For the following reasons, I disagree.

## III

The plaintiff bears the burden of proving that she is under a disability. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).  The standard for disability is strict.   The plaintiff must show that her "physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work

experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C.A. §§ 423(d)(2)(A); 1382c(a)(3)(B).

In assessing disability claims, the Commissioner applies a five-step sequential evaluation process.  The Commissioner considers whether the claimant: (1) has worked during the alleged period of disability; (2) has a severe impairment; (3) has a condition that meets or equals the severity of a listed impairment; (4) could return to her past relevant work; and (5) if not, whether she could perform other work present in the national economy.  *See* 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4) (2011).  If it is determined at any point in the five-step analysis that the claimant is not disabled, the inquiry immediately ceases.  *Id*.  The fourth and fifth steps of the inquiry require an assessment of the claimant's RFC, which is then compared with the physical and mental demands of the claimant's past relevant work and of other work present in the national economy.  *Id.*; *Johnson v. Barnhart*, 434 F.3d 650, 653-54 (4th Cir. 2005).

In accordance with the Act, I must uphold the Commissioner's findings if substantial evidence supports them and the findings were reached through application of the correct legal standard.  *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).  Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation marks and citation omitted).  Substantial

-8-

evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).  It is the role of the ALJ to resolve evidentiary conflicts, including inconsistencies in the evidence.  *Seacrist v. Weinberger*, 538 F.2d 1054, 1056-57 (4th Cir. 1976).  It is not the role of this court to substitute its judgment for that of the Commissioner. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

Dearry argues that the ALJ's determination that her intellectual impairment does not reach the level of a listed impairment under the regulations lacks substantial evidentiary support.  She argues that the ALJ erred in discounting the results of Dr. Lanthorn's intellectual testing and that had the ALJ properly considered the IQ scores, the ALJ would have found that she was disabled.

The mental retardation listing states:

12.05 Mental retardation:  Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e. the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

20 C.F.R. Pt. 404. Subpt. P, App'x 1 § 12.05 (2011).  Dearry's challenges the ALJ's decision that her impairment does not meet the requirements in Subpart C:

C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]

*Id.*

Dearry is correct in arguing that the ALJ's conclusion that the results of Dr. Lanthorn's IQ testing were invalid was not supported by substantial evidence. *See McLain v. Schweiker*, 715 F.2d 866, 869 (4th Cir. 1983) ("Objective medical facts and the opinions and diagnoses of the treating and examining doctors constitute a major part of the proof to be considered in a disability case and may not be discounted by the ALJ."); *see also Mitchell v. Schweiker*, 699 F.2d 185, 187-88 (4th Cir. 1983) (reversing ALJ's decision disregarding physician's opinion because ALJ did not cite sufficient evidence).

The ALJ discounted Dearry's IQ scores based only on her own assessment that Dearry's impairment was "more indicative of a learning disability and/or difficulty reading." (R. at 21.) This assessment has no support in the record. Dr. Lanthorn's tests represented the only valid scores of Dearry's intellectual functioning in the record.[3] Dr. Lanthorn stated that Dearry was well motivated in taking the tests and opined that the scores were valid. Further, the scores comport

---

[3]   As Dr. Lanthorn noted, Dearry's scores on his tests were statistically "comparatively identical" to those she scored in 2003. (R. at 700.) Dearry argues that the disappearance of the 2003 testing from the record should further invalidate the ALJ's conclusion. However, the evidence of those tests does appear in the record through repeated and consistent reference by the various reviewers. Further, the validity of those tests was always a significant question. Finally, as discussed below, the fact that Dearry's IQ scores fell within the range dictated by § 12.05(C) does not ultimately change the conclusion that her impairment does not meet the listing level.

with all of the other evidence of Dearry's intellectual functioning in the record, in that they indicate she functions in the borderline intellectual range and has so functioned for all of her life.  Both state agency psychologists so opined and there is no evidence in the record contradicting this conclusion.  The ALJ's analysis was simply wrong.

The fact that Dearry's IQ scores fall within the range prescribed by § 12.05(C) does not establish that she meets the listing requirement for mental retardation.  In fact, the overall evidence of the record indicates that Dearry does not meet the threshold requirement for mental retardation set out in the introductory paragraph to § 12.05.  The introduction to section 12.00 Mental Disorders states:

> Listing 12.05 contains an introductory paragraph with the diagnostic description for mental retardation.  It also contains four sets of criteria (paragraphs A through D).  If your impairment satisfies the diagnostic description in the introductory paragraph *and* any one of the four sets of criteria, we will find that your impairment meets the listing.

20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00 (2011) (emphasis added).  The plain language of the regulation provides that to satisfy the listing requirements, an impairment must meet *both* the introductory requirement *and* the additional requirements outlined in the particular sections.  It is clearly established law in the Fourth Circuit that the introductory paragraph to § 12.05 states mandatory requirements.  *Luckey v. U.S. Dep't of Health & Human Servs.*, 890 F.2d 666, 668

(4th Cir. 1989) ("In dispute are the issues of whether Luckey's low IQ manifested itself in deficits in his adaptive behavior before age 22 and whether he has a physical or mental impairment imposing additional and significant work-related limitation of function."); *Goelling v. Astrue*, No. 7:09cv00225, 2010 WL 3733538, at *3 (W.D. Va. Aug. 30, 2010) (finding that the court did not need to reach the question of whether the subsections of § 12.05 were satisfied because the claimant had not met the requirement of the introductory paragraph); *Moon v. Astrue*, No. 6:08cv40016, 2009 WL 430434, at *7 (W.D. Va. Feb. 20, 2009) (finding that claimant must prove deficits in adaptive functioning as well as requirements of subpart C), *accepted by* 2009 WL 650390, at *1 (W.D. Va. Mar. 11, 2009); *Thomas v. Astrue*, No. 1:07cv00022, 2008 WL 2169015, at *14 (W.D. Va. May 23, 2008) (finding that claimant must prove requirements of the introductory paragraph as well as requirements of subpart C).

Thus, to meet the listing requirement of § 12.05, Dearry had to prove that "she has had deficits in adaptive functioning that began during childhood and also demonstrate that she meets the IQ requirement and has a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Thomas*, 2008 WL 2169015, at *14. The key question in this case is whether the evidence shows that Dearry has had deficits in adaptive functioning manifesting before the age of 22. Adaptive functioning refers to more than simply

an IQ score or grades in school.  "Adaptive functioning refers to how effectively individuals cope with common life demands and how well they meet the standards of personal independence expected of someone in their particular age group, sociocultural background, and community setting."  Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 42 (4th Ed. 1994).

It is true that, in the absence of evidence that Dearry's IQ had changed, it may be assumed that her scores have remained relatively constant throughout her life, including before she turned 22.  *Luckey*, 890 F.2d at 668.  However, her IQ score, in the context of all of the evidence, is not enough to prove that she has had deficits in adaptive functioning indicative of mental retardation.  *See Moon*, 2009 WL 430434, at *7-8.  The evidence in this case strongly supports the conclusion that Dearry copes with common life demands and meets the standards of personal independence very well.  As the ALJ thoroughly discussed, Dearry takes care of her three children, manages the benefits of her disabled children, works around the house, shops, and socializes with family members.  There is no evidence she is unable to maintain financial independence as she has done so in the past and at present.  She can read and write relatively well, as evidenced by her completion of the multiple forms required in the process of applying for DIB and SSI.  She passed the written driver's test and holds a valid driver's license.  She has held jobs in the past and indicated that she wished to do so again.  Dr. Lanthorn found that

she had a relatively good short-term memory and communication skills.  All of the psychologists who reviewed Dearry's case, including Dr. Lanthorn, found that she was capable of working at unskilled, nonstressful jobs.  The substantial evidence supports the conclusion that Dearry does not suffer from deficits in adaptive functioning such that she meets the listing requirements of § 12.05[4]

IV

For the foregoing reasons, the plaintiff's Motion for Summary Judgment will be denied, and the defendant's Motion for Summary Judgment will be granted.  A final judgment will be entered affirming the Commissioner's final decision denying benefits.

DATED:   April 9, 2012

/s/  James P. Jones
United States District Judge

---

[4] It is true that the evidence shows that Dearry was not successful in school.  But that lack of academic success does not equate with inability to function in life.  Dearry did not leave school because of her academic failure; she left to get married.  She can read and write, run a household, and maintain financial independence.  Her low grades and problems in school comport with a diagnosis of borderline intellectual functioning and do not require a finding of mental retardation.